**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN ROTH, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| WW NORTH AMERICA HOLDINGS, | ) | |
| INC., a Delaware Corporation; WEIGHT | ) | |
| WATCHERS INTERNATIONAL, INC., a | ) | |
| Virginia Corporation, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, SUSAN ROTH ("Plaintiff"), by and through undersigned counsel of record, and respectfully submits this Complaint against Defendants WW NORTH AMERICA HOLDINGS, INC., a Delaware Corporation, and WEIGHT WATCHERS INTERNATIONAL, INC., a Virginia Corporation, (collectively referred to as "Defendants" or "Weight Watchers"), alleging as follows:

## PARTIES

1.      Plaintiff Susan Roth is a citizen and resident of the United States and is currently a citizen and resident of the State of Florida. At all times pertinent to this Complaint, Plaintiff was a citizen and resident of the state of Illinois and resided at 1517 Terrance Drive, Naperville, Illinois, 60565. Plaintiff has since moved to Florida and now resides at 1767 Hermitage Blvd, Unit 8304, Tallahassee, Florida 32308.

2.      Defendant WW NORTH AMERICA HOLIDNGS, INC., is a Delaware

1

Corporation, with a principal place of business located at 999 Stewart Avenue Suite 215 Bethpage, New York, 11714 and, upon information and belief at this time, is authorized to do business in Illinois as a foreign entity. Defendant WW NORTH AMERICA HOLIDNGS, INC. has a Registered Office address of: 801 Adlai Stevenson Drive, Springfield, Illinois, 62703 and may be served with process through its registered agent, Prentice Hall Corporation.

3.      Defendant WEIGHT WATCHERS INTERNATIONAL, INC. is a Virginia Corporation, with a principal place of business located at 675 Avenue of the Americas 6th Floor New York, New York 10010. Upon information and belief, WEIGHT WATCHERS INTERNATIONAL, INC. is not registered to do business in Cook County, Illinois.

4.      On or about May 4, 1993, Plaintiff began her employment with Defendants as a District Manager at Defendants' facility in the State of Illinois. Plaintiff continued her employment for a period of twenty-five years until she was terminated by Defendants on January 4, 2018.

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 29 U.S.C § 2617(a)(2) as Plaintiff's claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Equal Pay Act of 1963, 29 U.S.C. 206(d) ("EPA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA") present a federal question, and Plaintiff requests that this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the remaining claims herein as they are so related to Plaintiff's claims under the FMLA, ADA, EPA, ADEA, and Title VII that they form part of the same case or controversy under Article III of the United States Constitution. The

2

Court also has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) in that Plaintiff and Defendants are citizens of different states. Furthermore, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over Defendants related to this matter as, *inter alia*, (1) Plaintiff was employed by Defendants in the State of Illinois for a period of approximately twenty-five years; (2) Defendants engaged in unlawful conduct with regard to Plaintiff's employment while Defendants were doing business in the State of Illinois and Plaintiff was in Defendants' employ in the State of Illinois; and (3) Defendant WW NORTH AMERICA HOLIDNGS, INC. has a Registered Office address of: 801 Adlai Stevenson Drive, Springfield, Illinois, 62703 and may be served with process through its registered agent, Prentice Hall Corporation in the State of Illinois.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## ADMINISTRATIVE PROCEEDINGS

8. On or around June 27, 2018, Plaintiff timely filed a charge of discrimination against Defendants with the Illinois Department of Human Rights ("IDHR"), IDHR charge number 2018CA2885 ("IDHR Charge"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), EEOC charge number 21B-2018-01654 ("EEOC Charge") (collectively named here after as the "Charges").

9. A true and correct copy of the Charges are attached hereto as **Exhibit A**.

10. On or around May 2, 2019, the IDHR issued Plaintiff an Order of Closure (the "Order of Closure Letter") relative to the IDHR Charge.

3

11.     A true and correct copy of the Order of Closure Letter is attached hereto as **Exhibit B**.

12.     On or around June 7, 2019, the EEOC issued Plaintiff a Notice of Right to Sue (the "Right to Sue Letter") relative to the EEOC Charge.

13.     A true and correct copy of the Right to Sue Letter is attached hereto as **Exhibit C**.

14.     Plaintiff has timely filed this action within ninety (90) days of Plaintiff's receipt of the Right to Sue Letter, and the Order of Closure Letter.

15.     Plaintiff satisfied all procedural and administrative requirements necessary to institute this lawsuit.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16.     Defendants operate a business offering weight loss services, packages, and motivational inspiration.

17.     According to a form 10-K submitted by Weight Watchers International, Inc. on or about February 26, 2019, the company describes itself as:

> [A] global wellness company and the world's leading commercial weight management program. We are focused on inspiring people to adopt healthy habits for real life. With over five decades of weight management experience, expertise and know-how, we have established Weight Watchers as one of the most recognized and trusted brand names among weight-conscious consumers. In 2018, we announced new articulations of our brands, including our evolving focus on WW, to further reinforce our mission to focus on overall health and wellness. We educate our members and provide them with guidance and an inspiring community to enable them to develop healthy habits. WW-branded services and products include digital offerings provided through our websites, mobile sites and apps, workshops conducted by us and our franchisees, consumer products sold direct to consumers, licensed and endorsed products sold in retail channels, and publications.

18.     On or around May 4, 1993, Plaintiff began her employment with Weight Watchers as a Center Manager.

19.     Throughout Plaintiff's employment with Weight Watchers, she was a stellar employee and a top performer, consistently receiving high ratings on her annual performance reviews and was never disciplined throughout her entire employment with Weight Watchers.

20.     As a Weight Watchers employee, Plaintiff received numerous job promotions and she was later promoted to the position of Regional Director.

21.     As Regional Director, Plaintiff  (1) was responsible for managing 28 direct reports (not including the thousands of employees who were managed by her 28 reports), (2) had significant oversight responsibilities, spanning ten states and roughly 28% of Weight Watchers' territorial sales in the United States; (3) supported Weight Watchers' marketing department; and (4) served as a driver for Weight Watchers' customer retention programs. Plaintiff's tireless efforts and commitment to her position resulted in revenue to Weight Watchers of approximately $150M-$155M per year.

22.     On or around January 2006, Plaintiff was diagnosed with breast cancer.

23.     Shortly thereafter, Plaintiff made Defendants aware of her condition.

24.     On or around January 30, 2006, Plaintiff applied for and was approved to receive Short Term Disability leave, for purposes of receiving treatment for her breast cancer.

25.     On or about May 1, 2006, Plaintiff returned to work at Weight Watchers, notwithstanding that she was approved for leave through and including June 2, 2006. Plaintiff returned to work earlier than expected so that she could resume her role as an integral member of the Weight Watchers team and to continue to build momentum and excitement for the Weight Watchers brand.

26.     In or around August 2016, Plaintiff was approached by Weight Watchers and asked to be a lead contributor for "Project Lift," an effort by Weight Watchers, in alignment with the

American Cancer Society, to raise awareness for and to encourage funding relative to breast cancer. Defendants recognized that their participation in Project Lift would promote the Weight Watchers brand.

27.     As a breast cancer survivor, Plaintiff welcomed the idea of using her likeness and testimony for purposes of the Project Lift promotional video and agreed to play an active role in its production.

28.     In or around March 2017, Plaintiff was asked to review bonus sheets for all of the Territory Managers who were her direct reports.

29.     As part of her review of the Territory Manager bonus sheets, Plaintiff discovered a discrepancy between the bonuses of two Territory Managers (scheduled to receive an annual bonus of 10%) and promises made by a Weight Watchers Vice President on multiple occasions during Weight Watchers' national meetings (that all Territory Managers were to receive annual bonuses of 15%) (the "Bonus Issue").

30.     Plaintiff immediately brought this discrepancy to the attention of her supervisor, Michelle Mendoza ("Mendoza"). Mendoza directed Plaintiff to Weight Watchers' Human Resources Department to address the issue.

31.     Per Mendoza's instruction, Plaintiff spoke with Nancy Rothman ("Rothman") in Weight Watchers' Human Resources Department.

32.     To Plaintiff's surprise, Rothman advised Plaintiff that, notwithstanding the public statements made by a Weight Watchers Vice President, the bonuses for the two Territory Managers in question would remain at 10%.

33.     Plaintiff persisted in her efforts with respect to the Bonus Issue, acting on behalf of two of her direct reports. After several calls and email exchanges with Mendoza over the course

of approximately one month, Weight Watchers made the decision to pay the two Territory Managers a 15% bonus as promised by the Vice President of the Company on multiple occasions during national meetings.

34.     In or around March 2017, another Territory Manager who reported directly to Plaintiff, was promoted to a leadership position. The Territory Manager in question reported to Plaintiff that she was told by Weight Watchers that she would lose her health benefits and would be required to requalify the following year (the "Health Benefit Issue").

35.     Again, Plaintiff felt this treatment of a Territory Manager who directly reported to her was unfair and violative of Defendants' policies. Plaintiff spoke with Mendoza about the Health Benefit Issue. Mendoza told Plaintiff to "handle it."

36.     Plaintiff brought the Health Benefit Issue to Weight Watchers Human Resources.

37.     Weight Watchers thereafter launched an investigation into the Health Benefit Issue, using Deloitte as an external consultant, that spanned approximately six weeks.

38.     At the conclusion of the investigation, Weight Watchers, with the assistance of Deloitte, concluded that that the Territory Manager in question could continue receiving health benefits and would not lose them as part of her job transition.

39.     In March 2017, in or around the time Plaintiff reported the Bonus Issue and the Health Benefits Issue to Weight Watchers, Mendoza conducted Plaintiff's annual review over cocktails at the Sheraton Hotel near the Chicago O'Hare airport. The annual review period covered October 21, 2016 through March 31, 2017 (the "Review Period").

40.     The annual review was positive from Plaintiff's perspective, as Mendoza did not provide any negative feedback relative to Plaintiff's work performance during the Review Period.

41.     Mendoza thereafter provided a performance review related to Plaintiff's

performance during the Review Period. Plaintiff was given an overall rating of 4/5 – "exceeded expectations."

42. Mendoza then "updated" the review of Plaintiff's performance during the Review Period, reducing her overall rating of Plaintiff's performance to 3.3/5 – "met expectations."

43. Mendoza did not provide Plaintiff with any reasonable basis for the reduction or for updating Plaintiff's overall rating during the Review Period.

44. In May 2017, Plaintiff met with Mendoza to speak about the concerns she previously reported to Mendoza and Weight Watchers Human Resources – the Bonus Issue and the Health Benefit Issue. Plaintiff told Mendoza she considered these to be significant issues for Weight Watchers and were matters that should have been outside the scope of her responsibility. Plaintiff told Mendoza that she would prefer that Human Resources or that a more senior level manager handle such issues in the future. Further, Plaintiff expressed her concern that she would be viewed or treated in a negative manner for bringing these issues to the attention of Weight Watchers.

45. On or around August 27, 2017, Plaintiff was on PTO while Hurricane Harvey was coming ashore in Houston, Texas. Plaintiff immediately ended her PTO early to reach out to her teams that were impacted by the natural disaster. Plaintiff scheduled daily calls to ensure all staff and locations were accounted for during this time. Weight Watchers thereafter sent a company-wide email, recognizing Plaintiff's hard work and for "leading the charge" during this disaster.

46. On or around September 5, 2017, Plaintiff discovered that her special needs sister was being physically abused and was hospitalized with life-threatening injuries.

47. On or around mid-November 2017, Plaintiff applied for FMLA leave to have the reconstructive breast surgery related to her 2006 breast cancer diagnosis that she had been

postponing for years due to work.

48.     In or around November 16, 2017, Plaintiff informed Rothman of her decision to apply for FMLA leave so that, in mid-January 2018, Plaintiff could have reconstructive breast surgery related to her 2006 breast cancer diagnosis. Rothman responded that Plaintiff's use of FMLA leave in mid-January, 2018 was "bad timing."

49.     On or around November 24, 2017, Plaintiff's sister passed away.

50.     Plaintiff took approved leave from December 11, 2017 through the end of 2017, so that she could grieve the death of her sister.

51.     Notwithstanding that Plaintiff was out on approved leave, Plaintiff was in constant contact with Defendants and continued to work during approved leave.

52.     While out on approved leave, Plaintiff was required by Weight Watchers to travel to Wisconsin to conduct interviews.

53.     Plaintiff returned to work on or around January 2, 2018.

54.     Two days later, on January 4, 2018, Mendoza and Rothman met with Plaintiff for approximately five minutes and terminated her employment.

55.     During the January 4, 2018 meeting, Plaintiff asked Mendoza and Rothman why she was being terminated and Mendoza gave Plaintiff absolutely no reason for her termination.

56.     On or around January 25, 2018, Plaintiff's counsel sent Weight Watchers a demand letter outlining that she believed that her termination was unlawful.

57.     On or around June 7, 2018, without informing Plaintiff, Weight Watchers made a direct deposit into Plaintiff's account.

58.     Plaintiff has been required to employ the undersigned legal counsel to pursue her claims and is obligated to pay them a reasonable fee for their services.

9

## COUNT ONE
## FMLA INTERFERENCE, 29 U.S.C. § 2615(a)(1)

59.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 58 hereof.

60.     The FMLA entitles eligible employees to a 12-week leave period during any 12-month period for a serious health condition.

61.     29 U.S.C. § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise the existence of or the attempt to exercise" any right protected by the FMLA.

62.     Plaintiff was, at all relevant times, eligible for FMLA protection.

63.     Defendants were, at all relevant times, covered by the FMLA.

64.     Plaintiff was, at all relevant times, entitled to leave under the FMLA, as (1) she qualified for FMLA based on the fact that she had worked over 1,250 hours during the previous 12 months; (2) had not exhausted her 12 weeks of FMLA leave in the 12 months immediately preceding her scheduled FMLA leave; (3) Plaintiff's breast cancer diagnosis constituted a "serious health condition" as that phrase is defined by the FMLA; and (4) Plaintiff's breast reconstruction surgery was directly related to and necessitated by Plaintiff's breast cancer diagnosis.

65.     The Plaintiff provided Defendants with sufficient notice of her intent to take FMLA leave by, *inter alia*, on or about November 16, 2017, notifying her supervisor of her intent to take FMLA leave in mid-January 2018.

66.     The Defendants' conduct herein, including, *inter alia*, their termination of the Plaintiff immediately prior to the Plaintiff's scheduled FMLA leave which served to deny Plaintiff protected leave under the FMLA, interfered with, restrained, and/or denied the exercise of Plaintiff's FMLA rights provided by 29 U.S.C. § 2611 *et seq.*

67.     The Defendants' conduct herein constitutes a willful violation of the FMLA.

68.     As a direct and proximate result of the Defendants' willful FMLA interference, the Plaintiff has suffered damages recoverable under 29 U.S.C. § 2617, including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A.  Enter a finding that Plaintiff was subjected to unlawful interference under the FMLA;

B.  Award Plaintiff lost wages and lost benefits;

C.  Award Plaintiff front pay as appropriate;

D.  Award Plaintiff liquidated damages in an amount to be proven at trial;

E.  Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

F.  Award Plaintiff prejudgment interest; and

G.  Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT TWO
## FMLA RETALIATION, 29 U.S.C. § 2615(a)(2) & (b)

69.     The Plaintiff incorporates by reference Paragraphs 1 through 58.

70.     29 U.S.C. § 2615(a)(2) prohibits employers from discharging or discriminating against employees for "opposing any practice made unlawful" by the FMLA.

71.     It is unlawful to consider FMLA-related leave as a negative factor when deciding whether to terminate employees.

72.     Plaintiff engaged in a statutorily-protected activity when she, *inter alia*, informed

her supervisor on or around November 16, 2017 that she intended to take FMLA leave in mid-January 2018 for purposes of having breast reconstruction surgery related to an earlier breast cancer diagnosis.

73.     Defendants took a materially adverse action with respect to Plaintiff's employment, terminating her only days before her FMLA leave was scheduled to begin.

74.     There exists a causal connection between Plaintiff's requested FMLA leave, scheduled for mid-January 2018 and her termination only days earlier on January 4, 2018.

75.     Defendants have provided no reason for Plaintiff's termination at all and provided none during the termination meeting on January 4, 2018.

76.     Defendants retaliated against Plaintiff in violation of 29 U.S.C. § 2615(a)(2) by terminating her employment only days before her FMLA leave was scheduled to begin.

77.     As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages recoverable 29 U.S.C. § 2617, including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.     Enter a finding that Plaintiff was subjected to unlawful retaliation under the FMLA;

B.     Award Plaintiff lost wages and lost benefits;

C.     Award Plaintiff front pay as appropriate;

D.     Award Plaintiff liquidated damages in an amount to be proven at trial;

E.     Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

F.      Award Plaintiff prejudgment interest; and

G.      Award Plaintiff any further relief this Court deems to be just and appropriate.

**COUNT THREE**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH**
**DISABILITES ACT of 1990, as amended, 42 U.S.C. § 12101, et seq.**

78.      The Plaintiff incorporates by reference Paragraphs 1 through 58.

79.      At all relevant times, the Plaintiff qualified for the protections of the ADA.

80.      At all relevant times, the Defendants herein were "employers" subject to coverage under the ADA.

81.      At all relevant times, Plaintiff suffered a disability within the meaning of the ADA because she has a physical impairment, breast cancer, that substantially limits one or more major life activities.

82.      Defendants knew that the Plaintiff suffered from this disability, regarded Plaintiff as disabled and/or there is a record of Plaintiff being disabled.

83.      At all relevant times, Plaintiff was qualified to perform the essential functions of her job with Defendants with or without accommodation.

84.      Plaintiff suffered an adverse employment action because of her disability when she was terminated only days before her scheduled breast reconstruction surgery which was directly related to her prior breast cancer diagnosis.

85.      Defendants' decision to terminate the Plaintiff's employment immediately prior to her scheduled reconstructive breast surgery was pretextual, designed to cover-up Defendants' illegal employment practices alleged herein.

86.      Plaintiff was subjected to unlawful discrimination because of her disability.

87.      As a direct and proximate result of the Defendants' actions, the Plaintiff has

suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter a finding that Plaintiff was subjected to unlawful discrimination under the ADA;

B.    Award Plaintiff lost wages and lost benefits;

C.    Award Plaintiff compensatory and punitive damages;

D.    Award Plaintiff front pay as appropriate;

E.    Award Plaintiff liquidated damages in an amount to be proven at trial;

F.    Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.    Award Plaintiff prejudgment interest; and

H.    Award Plaintiff any further relief this Court deems to be just and appropriate.

<u>**COUNT FOUR**</u>
<u>**WRONGFUL DISCHARGE**</u>

88.    The Plaintiff incorporates by reference Paragraphs 1 through 58.

89.    In or around March 2017, Plaintiff objected to Defendants' pay practices and Defendants' position that one of Plaintiff's direct reports would lose health benefits as a result of transferring to a new position with the company.

90.    Plaintiff reasonably believed both of these practices to be unlawful.

91.    As a direct and proximate result of Plaintiff's objections and complaints relative to Defendants' practices, Plaintiff's employment was terminated by Defendants.

92.    As a direct and proximate result of the Defendants' actions, the Plaintiff has

14

suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter a finding that Plaintiff was wrongfully discharged in violation of Illinois common law;

B.    Award Plaintiff lost wages and lost benefits;

C.    Award Plaintiff compensatory and punitive damages;

D.    Award Plaintiff front pay as appropriate;

E.    Award Plaintiff liquidated damages in an amount to be proven at trial;

F.    Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.    Award Plaintiff prejudgment interest; and

H.    Award Plaintiff any further relief this Court deems to be just and appropriate.

**COUNT FIVE**
**AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**OF 1967, 29 U.S.C. §§ 621, et seq.**

93.    The Plaintiff incorporates by reference Paragraphs 1 through 58.

94.    Plaintiff is over the age of 40.

95.    Defendants intentionally discriminated against Plaintiff on the basis of her age.

96.    Defendants committed the aforesaid discriminatory acts with malice or with reckless indifference to Plaintiff's federally protected rights under the ADEA.

97.    Defendants have engaged in a pattern and practice of such discrimination against similarly situated individuals.

98.     As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.     Enter a finding that Plaintiff was subjected to age discrimination in violation of the ADEA;

B.     Enter a finding that Defendants willfully engaged in the age discrimination with malice and reckless indifference for Plaintiff's rights under the ADEA;

C.     Award Plaintiff lost wages and lost benefits;

D.     Award Plaintiff front pay as appropriate;

E.     Award Plaintiff liquidated damages in an amount to be proven at trial;

F.     Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.     Award Plaintiff prejudgment interest; and

H.     Award Plaintiff any further relief this Court deems to be just and appropriate.

**COUNT SIX**
**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.S. § 2000e et seq.**

99.     The Plaintiff incorporates by reference Paragraphs 1 through 58.

100.     Plaintiff belongs to a protected group.

101.     Plaintiff was subjected to unlawful discrimination on account of her gender, including but not limited to being (1) subjected to unfair scrutiny and received lower scores on her performance reviews because of her gender (female); and (2) being terminated on account of her

gender, including, but not limited to, being terminated because of her upcoming breast reconstruction surgery necessitated by a prior breast cancer diagnosis.

102.     As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.     Enter a finding that Plaintiff was subjected to gender discrimination in violation of Title VII;

B.     Enter a finding that Defendants willfully engaged in the gender discrimination with malice and reckless indifference for Plaintiff's rights under Title VII;

C.     Award Plaintiff lost wages and lost benefits;

D.     Award Plaintiff compensatory and punitive damages;

E.     Award Plaintiff front pay as appropriate;

F.     Award Plaintiff liquidated damages in an amount to be proven at trial;

G.     Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

H.     Award Plaintiff prejudgment interest; and

I.     Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT SEVEN
## VIOLATION OF THE EQUAL PAY ACT OF 1963, 29 U.S.C. 206(d)

103.     The Plaintiff incorporates by reference Paragraphs 1 through 58.

104.     Plaintiff was employed by Defendants and Defendants paid her lower wages than they paid to substantially equivalent male employees in similar circumstances.

105.    As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter a finding that Plaintiff was subjected to pay discrimination in violation of the EPA;

B.    Enter a finding that Defendants willfully engaged in pay discrimination with malice and reckless indifference for Plaintiff's rights under the EPA;

C.    Award Plaintiff lost wages and lost benefits;

D.    Award Plaintiff front pay as appropriate;

E.    Award Plaintiff liquidated damages in an amount to be proven at trial;

F.    Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.    Award Plaintiff prejudgment interest; and

H.    Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT EIGHT
## AGE DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/1-101, et seq.

106.    The Plaintiff incorporates by reference Paragraphs 1 through 58.

107.    Plaintiff is over the age of 40.

108.    Defendants intentionally discriminated against Plaintiff on the basis of her age.

109.    Defendants committed the aforesaid discriminatory acts with malice or with reckless indifference to Plaintiff's federally protected rights under the ADEA.

110. Defendants have engaged in a pattern and practice of such discrimination against similarly situated individuals.

111. As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.  Enter a finding that Plaintiff was subjected to age discrimination in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*;

B.  Enter a finding that Defendants willfully engaged in age discrimination with malice and reckless indifference for Plaintiff's rights under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq*.;

C.  Award Plaintiff lost wages and lost benefits;

D.  Award Plaintiff front pay as appropriate;

E.  Award Plaintiff liquidated damages in an amount to be proven at trial;

F.  Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.  Award Plaintiff prejudgment interest; and

H.  Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT NINE
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/1-101, et seq.

112. The Plaintiff incorporates by reference Paragraphs 1 through 58.

113. At all relevant times, Plaintiff suffered a handicap within the meaning of the Illinois

Human Rights Act as she was diagnosed with having breast cancer.

114.    Plaintiff is qualified for her position at Weight Watchers and the handicap (breast cancer) is unrelated to Plaintiff's ability to do the required work.

115.    Plaintiff suffered an adverse employment action because of her handicap when she was terminated only days before her scheduled breast reconstruction surgery which was directly related to her prior breast cancer diagnosis.

116.    Defendants' decision to terminate the Plaintiff's employment immediately prior to her scheduled reconstructive breast surgery was non-existent and/or pretextual, designed to cover-up Defendants' illegal employment practices alleged herein.

117.    Plaintiff was subjected to unlawful discrimination because of her disability.

118.    As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter a finding that Plaintiff was subjected to disability discrimination in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*;

B.    Enter a finding that Defendants willfully engaged in disability discrimination with malice and reckless indifference for Plaintiff's rights under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*;

C.    Award Plaintiff lost wages and lost benefits;

D.    Award Plaintiff front pay as appropriate;

E.      Award Plaintiff liquidated damages in an amount to be proven at trial;

F.      Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.      Award Plaintiff prejudgment interest; and

H.      Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT TEN
## GENDER DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/1-101, et seq.

119.      The Plaintiff incorporates by reference Paragraphs 1 through 58.

120.      Plaintiff belongs to a protected group.

121.      Plaintiff was subjected to unlawful discrimination, including but not limited to (1) being subjected to unfair scrutiny and received lower scores on her performance reviews because of her gender; and (2) being terminated on account of her gender.

122.      As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered damages including, but not limited to, wages, benefits, other compensation, monetary losses, front-pay, back-pay, and as a result of the Defendants' bad faith, an additional amount in liquidated damages equal to the other damages enumerated. In addition, Plaintiff is entitled to all equitable relief, including employment, reinstatement, promotion, and other equitable relief.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.      Enter a finding that Plaintiff was subjected to gender discrimination in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*;

B.      Enter a finding that Defendants willfully engaged in gender discrimination with malice and reckless indifference for Plaintiff's rights under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*;

C.      Award Plaintiff lost wages and lost benefits;

D.     Award Plaintiff front pay as appropriate;

E.     Award Plaintiff liquidated damages in an amount to be proven at trial;

F.     Award Plaintiff his reasonable attorneys' fees and costs of suit herein;

G.     Award Plaintiff prejudgment interest; and

H.     Award Plaintiff any further relief this Court deems to be just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully submitted this 29th day of July, 2019.

Susan Roth by her attorneys:

**STUART AND JOHNSTON, LLC**

/s/Andrew H. Stuart
Andrew H. Stuart, Attorney ID # 6278550
3535 Peachtree Road
Suite 520-420
Atlanta, Georgia 30326
Telephone: (404) 662-2614
Facsimile: (404) 935-6194
astuart@stuartandjohnston.com

*Attorneys for Plaintiff Susan Roth*